Filed 2/24/21  In re S.M. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re S.M. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B305516 <br> (Los Angeles County <br> Super. Ct. No. 20LJJP00002-A/B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STEVE M., <br><br> Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Kelley, Judge.  Dismissed.

John L. Dodd & Associates and John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephanie Jo Reagan, Principal Deputy County Counsel, for Plaintiff and Respondent.

Respondent Los Angeles County Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300[1] alleging several bases for jurisdiction over siblings S.M. and J.M., which included the mother's substance abuse, unaddressed mental health problems, domestic violence and physical violence against the boys, and appellant Steve M.'s (father) extensive history of drug- and violence-related crime. The juvenile court sustained the petition, and ordered the children detained.

Father contends there was insufficient evidence to establish that his sons were at risk of harm. He concedes that the juvenile court will maintain jurisdiction over the boys regardless of the outcome of this appeal, as mother has not appealed the jurisdictional findings related to her conduct, and does not challenge the court's dispositional orders. Nevertheless, father urges us to exercise our discretion to consider his assertions of error regarding jurisdiction. We conclude that father's challenge is not justiciable. Accordingly, we dismiss the appeal.

## BACKGROUND

On December 28, 2019, DCFS received a referral for S.M, and his brother, J.M. (then ages 10 and 7, respectively), after their mother was charged with a felony (domestic violence against her live-in companion). Mother identified Steve M. as the boys' father. His whereabouts were unknown. Neither mother nor the children had any contact with father,

---

[1] Statutory references are to the Welfare and Institutions Code.

2

whom mother claimed had tried to kill her.  The boys told a DCFS social worker they had not seen father in a long time and father never called them.

Father's CLETS report reflected multiple arrests and convictions between 1996 and 2019 for, among other things, drug- and violence-related crimes, including corporal injury to a spouse.  Mother's CLETS report reflected arrests for driving while intoxicated and for inflicting corporal injury on a spouse.

The family has a long history with DCFS.  DCFS received the first referral in May 2009, after mother appeared at a party with black eyes and serious injuries.  She reported that father had punched her repeatedly during an argument to the point that she almost lost consciousness.  She suffered a skull fracture, broken eardrum, black eyes and bruises to her chest and thigh.  Mother told DCFS she had regularly been beaten by father, including when she was pregnant.  DCFS received five other referrals regarding the family between 2012 and 2016:  one in 2012, based on a claim that father was incarcerated and mother abused alcohol and methamphetamine; two in 2015, after mother hit the boys, and a second referral after she was found passed out and slumped over a steering wheel with an open beer within reach and the children in the car; and two in January 2016, first after a teenage cousin reportedly sexually abused S.M., and later that month after it was reported that mother passed out after using methamphetamine.

In late December 2019, DCFS obtained authorization to remove the boys from mother's care and placed them with a relative.

On January 2, 2020, DCFS filed a section 300 petition, premised on a history of domestic violence with her live-in companion in the children's presence. (§ 300, subds. (a) & (b).)

At the detention hearing in early January, the court was informed that father was homeless and had had virtually no contact with the children. The children were detained from parents.

In its report for the jurisdictional hearing, DCFS detailed father's lengthy history of arrests and convictions, a number of which involved serious violence.[2] Mother informed DCFS that father had always been physically abusive to her, including during her pregnancy with S.M., and had repeatedly been jailed. Mother escaped father after S.M. was born and father was arrested for domestic violence against her. However, the parents resumed a sexual relationship after father was released and she conceived J.M. Mother had applied for two domestic

_____

[2]    Father's arrests included burglary; inflicting corporal injury on a spouse/cohabitant; battery with serious bodily injury; robbery; possession of loaded firearms, serious bodily injury; possession of a controlled substance while in prison; assault with a deadly weapon, great bodily injury (GBI) likely; hit and run causing property damage; and several driving-related offenses and parole violations.

His convictions included second-degree robbery (2003), parole violation (2004); prohibited ownership/possession of ammunition (2007); infliction of corporal injury on a spouse or cohabitant (2009); assault with a deadly weapon, GBI likely (2012); possession of a controlled substance while incarcerated (2014); hit and run causing property damage (2018); and reckless driving and driving without a license (2019).

violence restraining orders (DVRO) against father in 2009 and 2013. She did not pursue the first DVRO and was denied a DVRO in 2013.

S.M. told DCFS mother had had a boyfriend named Steve (after whom he was named) when he was little, and "[h]e used to do drugs and kill people. He was really bad." S.M. did not know and had only been told about his biological father, whom he said, "wasn't really nice." Neither boy had any personal memory of father.

A social worker spoke with father on February 4, 2020. When asked when he last saw his sons, father said it had "been a while because [he had] always usually been in and out of the system." He said he and mother did not see "eye to eye," and he claimed mother had a tendency to disappear, so it had been "like 3 years." Father had not wanted "to look for [mother] because [they] had a domestic violence incident so [he] just stay[ed] away." When asked if he had taken any courses given his history of arrests and conviction for domestic violence, father said he "took anger management last time [he] had a case, [he] didn't] know whatever weeks they wanted [him] to take."

Father informed DCFS that he sought "no custody at all," and "just want[ed] to know [the boys were] ok." Father hoped to obtain custody "in the future once [he got] on [his] feet." In the meantime, he was content to have the children remain with a relative and have monitored visitation. DCFS concluded the risk to the boys was high. They should remain detained from father with whom they had had limited contact, who was unable to provide for them, and who had an

extensive criminal history of drug-related and violent offenses, including domestic violence against mother.

On February 5, 2020, father was found to be the boys' presumed father. The court ordered the children to remain detained, and gave father monitored visitation.

On February 10, 2020, DCFS filed the operative first amended petition (petition) adding allegations regarding mother's abuse of alcohol and illicit substances, physical abuse of the boys and threats to harm them further if they disclosed the abuse, and her unaddressed mental and emotional health problems. The petition added a single count (b-5) against father alleging that father has a long-standing history of violence- and drug- related arrests, including drug related arrests. The allegation listed arrests for burglary, infliction of corporal injury on a spouse, battery with serious bodily injury, robbery, carrying a loaded firearm, possession of a firearm with an altered identification card, possession while driving of one ounce or less of marijuana, possession of ammunition, possession of a controlled substance in prison, felony assault, hit and run driving with property damage, and driving under the influence.

The petition alleged that father's history of drug- and violence-related arrests endangered the children and created a detrimental home environment placing the children's physical safety and emotional well-being at risk.

In mid-February, DCFS reported it had scheduled twice-weekly visits for father, which the boys refused to attend. They said they did

not want to visit father because "he is crazy and used to hit them." Their caretaker reported that the children claimed their stomachs hurt when the topic of parental visits was raised and refused to get out of the car for visits with father. Mother did not visit the children after their detention.

A combined jurisdiction/disposition hearing was conducted February 19, 2020. Mother entered a plea as to jurisdiction and disposition. The court sustained four counts against her (exposing the children to domestic violence, physical abuse of the children, abusing alcohol and other substances, and failing to address her mental health issues), and found the children were described by section 300, subdivision (b).[3]

DCFS's reports were received in evidence without objection. Father offered no additional evidence. Father's counsel argued there was no basis for juvenile court jurisdiction as to father. Counsel relied on *In re Sergio C.* (1999) 70 Cal.App.4th 957 (*Sergio C.*), in which the court found an insufficient evidentiary nexus between the jurisdictional findings and a parent's prior convictions. Counsel argued that here, as in *Sergio C.*, there was no nexus between father's criminal history and a current risk to the children, and thus no basis for assertion of jurisdiction as to father. Counsel also reminded the court that father did not seek custody. The boys' attorney agreed with DCFS's recommendations and argued that father's criminal history, coupled

---

[3] The court dismissed two counts under subdivision (a) that were identical to counts sustained under subdivision (b).

with an absence of any evidence that father had received any rehabilitation or pertinent education was sufficient to sustain a finding that there was a current substantial risk to the minors.

At the conclusion of the hearing the juvenile court distinguished *Sergio C.*, as a case in which it appeared "the arrests were for being in the wrong places with the wrong people and there were no convictions." The court observed that the facts of this case stood in "stark" contrast to those of *Sergio C.,* because "[father] has a long criminal history and a number of arrests and . . . convictions. The length, breadth, and duration of that criminal history on its own would suffice it [*sic*] to show there is current risk." The court added that it "also [was] struck by the observation of [S.M. who] said, 'When I was a little boy, mom had a boyfriend named Steve. They named me after him. He used to do drugs and kill people. He was really bad.'" The court noted it "obviously . . . [was] not fully crediting that statement as a statement of fact, but it demonstrates the impact that a criminal history can have on a minor. For that reason, I think it's an added factor that justifies a conclusion that there's a current risk here. I'm going to sustain b5 as amended against [father]."[4]

Proceeding to disposition, the court declared the boys to be dependent children of the court and found, "by clear and convincing evidence, there [was] or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the

---

[4]     The court directed DCFS to submit amended language tracking father's criminal history as described in the jurisdictional report. The record does not contain an interlineated petition.

child[ren] if [they] were returned" to parental custody and there were no reasonable means to protect them short of removal and ordered them removed from parental care. The court ordered that, consistent with the proposed case plan, father be afforded reunification services, including drug testing and a domestic violence program, joint counseling with the children (upon their therapist's approval) and monitored visitation. Father filed this timely appeal.

## DISCUSSION

Father maintains there is insufficient evidence to support the juvenile court's exercise of dependency jurisdiction as it relates to him. DCFS contends father's claim is not justiciable because mother has not appealed and thus the court's exercise of dependency jurisdiction remains appropriate based on her conduct no matter how we resolve father's appeal, and that father's arguments fail on the merits. DCFS is correct.

I. *Principles of Justiciability*

It is well settled that juvenile court jurisdiction attaches to children, not their parents. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 (*I.A.*).) If there is a single valid basis for exerting dependency jurisdiction over a child, a challenge to other jurisdictional bases will likely have no effect on the juvenile court's orders. An unchallenged finding is sufficient by itself to justify the exercise of dependency court jurisdiction. (*Ibid.*) In such cases, this court need not address whether there is sufficient evidentiary support as to any other jurisdictional

9

finding for the simple reason that the court "cannot render any relief to [the parent] that would have a practical, tangible impact on his position in the dependency proceeding." (*Id.* at p. 1492; *In re D.P.* (2014) 225 Cal.App.4th 898, 902 [so "'long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate'"]; *In re I.J.* (2013) 56 Cal.4th 766, 773; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (*M.W.*).)

Under the doctrine of justiciability, courts generally do not act upon or decide moot questions or abstract propositions, nor do they issue advisory opinions. "[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent. [Citations.]" (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings." (*I.A., supra,* 201 Cal.App.4th at p. 1492 ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status"].)

Father acknowledges these tenets of appellate law, as well as the rule that this court retains discretion to address the merits of a challenge to a jurisdictional finding, even if overturning that finding will have no immediate effect on the assertion of jurisdiction. (*I.A., supra*, 201 Cal.App.4th at pp. 1494–1495.) However, appellate courts generally exercise such discretion only upon a showing that (1) the

10

challenged finding will have some further consequence in the case at issue, such as when the finding "serves as the basis for dispositional orders that are also challenged on appeal," or (2) the challenged finding is itself "pernicious," "carries a particular stigma" or may could have further consequences in future dependency proceedings, such as when the juvenile court finds the appealing parent to be an "offending" parent rather than a "non-offending" parent. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763 (*Drake M.*); *M.W., supra*, 238 Cal.App.4th at p. 1452.)

II. *We Decline to Exercise our Discretion to Review the Jurisdictional Findings as to Father*

Father urges us to exercise our discretion to address the merits of his jurisdictional challenge arguing that the juvenile court's finding under paragraph b-5, if erroneous, has the potential to prejudicially impact him in this or future dependency proceedings. (See *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *Drake M., supra,* 211 Cal.App.4th at pp. 762–763.) We decline to do so.

We have discretion to consider the merits of a challenge to a jurisdictional finding, even if overturning that finding will have no immediate effect on the juvenile court's assertion of jurisdiction. (*I.A., supra*, 201 Cal.App.4th at pp. 1494–1495.) However, we generally will exercise that discretion only upon a showing that the challenged jurisdictional findings may have a further consequence in the matter at issue (e.g., when the findings serve as the basis for dispositional orders

11

challenged on appeal), or in a future dependency or family law proceeding in which the finding carries a particular stigma. (*M.W., supra*, 238 Cal.App.4th at p. 1452.)

Father has not made a persuasive showing as to why we should exercise our discretion to entertain his challenge to the jurisdictional findings. He has not identified any specific legal consequence or prejudice that may result from the jurisdictional findings made against him in this case. (See *I.A., supra*, 210 Cal.App.4th at p. 1493.) Although his opening brief asserts the jurisdictional findings are likely to prejudice his rights to his children in the present and future, the brief fails to articulate the nature of any such prejudice. Father's conclusory assertion of prejudice is insufficient to warrant our exercise of discretionary review. (See *In re J.C.* (2014) 233 Cal.App.4th 1, 4 [dismissing appeal of jurisdictional finding where parent claimed to have been prejudiced but did "not suggest[] any legal or practical consequences that might flow from [the] finding either within or outside the dependency proceedings"].)

Father notes that the jurisdictional finding as to him forms the basis for the dispositional order placing the boys in a relative's care and requiring him to participate in a reunification plan. But father does not take issue with either the children's removal—he specifically stated he was not seeking custody—or with the requirements of his case plan. Consequently, he fails to show that reversing the jurisdictional finding against him would effect meaningful change, now or in the foreseeable future.

12

Anticipating the result, father argues our conclusion is not warranted. He cites case law that an appellate court may review a dependency court's jurisdictional finding if reversing that finding reduces a parent's culpability from the stigma of an "offending" parent to a "non-offending" parent. (*In re Andrew S.* (2016) 2 Cal.App.5th 536, 542, fn. 2; *Drake M., supra*, 211 Cal.App.4th at p. 763.) Father argues that the stigma of the jurisdictional findings against him entitles him to such relief. His contention is unavailing because little, if any, additional stigma will likely attach to him from the dependency court's jurisdictional finding. Rather, any stigma he endures largely arises from undisputed facts that exist independently of the juvenile court proceedings. Those facts are: (1) by his own estimate, father has not seen his young sons since at least three years before this action began, and he has been and remains insufficiently stable to care for them; (2) father admits that these failures are due, in part, to the fact that he has repeatedly been in jail or prison (for, among other things, violent offenses, including at least one brutal attack on mother); and (3) father does not profess ever to have provided for the boys or to have been meaningfully involved in their lives. The children have few, if any, memories of him (none of which are positive), and the prospect of visits with father makes both boys feel physically ill. Father also ignores the fact that at trial, his counsel said father "would submit on family reunification," noting father wanted to "stabilize himself."

In short, no effective relief could be granted here, as jurisdiction is established regardless of any conclusion we might reach as to any

additional jurisdictional grounds.  (See *I.A., supra*, 201 Cal.App.4th at p. 1490.)  Father's jurisdictional challenge is not justiciable.

## DISPOSITION

Father's jurisdictional challenge is nonjusticiable.  The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                    WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.


14